IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tony Ray Truett, | ) | C/A No.:  1:11-cv-03530-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Terry L. Wooten's March 7, 2012, order referring this matter for disposition. [Entry #13].  The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards.  For the reasons that follow, the court affirms the Commissioner's decision.

I.    Relevant Background

A.    Procedural History

On November 5, 2008, Plaintiff filed an application for DIB in which he alleged his disability began on August 2, 2008.  Tr. at 60–61.  His application was denied initially and upon reconsideration.  Tr. at 34–35.  In July 2009, Plaintiff also protectively filed an application for SSI.  Tr. at 262–71.  This claim was denied initially and was subsequently associated with Plaintiff's DIB claim at the hearing level.  Tr. at 12, 276.  On November 30, 2010, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 280–310 (Hr'g Tr.).  The ALJ issued an unfavorable decision on January 7, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 12–21. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 5–7.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on December 28, 2011.  [Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 59 years old at the time of the hearing.  Tr. at 285.  He obtained a graduate equivalency diploma.  Tr. at 287.  His past relevant work ("PRW") was as a dump truck driver.  Tr. at 289.  He alleges he has been unable to work since August 2, 2008. Tr. at 60.

2.      Medical History

Records from McLeod Regional Medical Center dated October 1, 2007, indicate that Plaintiff suffered from anemia and bloody stools.  Tr. at 176.  Lilly Parker, M.D., of McLeod Family Medicine examined Plaintiff on October 3, 2007, for follow-up of his type 2 diabetes.  Tr. at 185.  Plaintiff complained of back pain that was at times 10/10 on the pain scale, occurring about once every three weeks and that seemed worse with driving and changes in weather.  *Id.*  Dr. Parker reported an MRI in 2003 revealed degenerative disc changes to Plaintiff's lumbar spine.  *Id.*  She noted Plaintiff was having some difficulty keeping his blood pressure under control and was cutting back on fried and fatty foods.  *Id.*  She stated that Plaintiff reported that he had not taken Lotensin for hypertension in six months and was not sure why he stopped it.  *Id.*  Dr. Parker diagnosed type 2 diabetes, hypertension, coronary artery disease (status post bypass in 2002), and degenerative disc disease.  *Id.*

Plaintiff returned to Dr. Parker for a recheck on November 1, 2007.  Tr. at 183.  Dr. Parker noted that Plaintiff's stools were positive for blood and recommended a colonoscopy.  *Id.*  She further noted that Plaintiff was not taking his hypertension medication.  *Id.*

Plaintiff underwent a colonoscopy on December 6, 2007, which revealed colitis, for which Dr. Parker prescribed Rowasa suppositories.  Tr. at 168.

In early July 2008, Plaintiff went to the emergency room and reported abdominal pain and cramping that was made worse with eating.  Tr. at 123.  Abdominal and pelvic CT scans were unremarkable.  Tr. at 158.  He was diagnosed with pancreatitis, type 2

diabetes, and hypertension, and was treated with hydration and medication.  Tr. at 123. During his hospitalization, his blood sugars and blood pressure were noted to be under good control.  *Id.*  Dr. Parker discharged Plaintiff two days later without limitations and encouraged him to remain hydrated and monitor for changes.  *Id.*

In November 2008, Plaintiff returned to Dr. Parker and reported back pain, which he said he had for months and that sometimes radiated down his leg. Tr. at 181.  Plaintiff rated the pain at a 10/10, but said that over-the-counter ibuprofen and Tylenol relieved the pain.  *Id.*  Plaintiff also reported occasional diarrhea or constipation.  *Id.*  On examination, he had a mildly positive straight leg raise test on the right, but full muscle strength in his arms and legs, and a nontender abdomen. *Id.*  In her assessment, Dr. Parker noted Plaintiff's reports of back pain, but did not diagnose an underlying medical impairment.  *Id.*  She diagnosed Plaintiff with type 2 diabetes, coronary artery disease, malignant hypertension, and irritable bowel syndrome.  *Id.*  She refilled his medications and encouraged him to exercise.  *Id.*

During a follow-up appointment in December 2008, Plaintiff reported nausea, vomiting, and diarrhea. Tr. at 179.  Dr. Parker noted that Plaintiff was doing well on his diabetes medication.  *Id.*  On examination, he exhibited full strength in his upper and lower extremities.  *Id.*  Dr. Parker diagnosed Plaintiff with gastroenteritis, controlled type 2 diabetes, and metabolic syndrome.  *Id.*

On March 5, 2009, Plaintiff presented to Dr. Parker and reported that he had discontinued his Glucophage secondary to abdominal pain and diarrhea. Tr. at 190.  Dr. Parker noted that Plaintiff had several bouts of pancreatitis and that he wanted to know

why.  *Id.*  Dr. Parker changed Plaintiff's medication from Glucophage to Glucotrol and explained to Plaintiff the relationship between elevated triglycerides and pancreatitis.  *Id.*

Dr. Parker saw Plaintiff in follow-up on April 6, 2009.  Tr. at 188.  She noted that his blood sugar levels were about 200 on Glucotrol and he was experiencing pain in his right hand.  *Id.*  On examination, Plaintiff exhibited full strength in his extremities, but had contracture of the flexor tendon with a knot on the fourth finger.  *Id.*  Dr. Parker diagnosed type 2 Diabetes, metabolic syndrome, hand pain, and coronary artery disease.  *Id.*

In April 2009, a peripheral arterial flow study and EKG were normal.  Tr. at 200–06.  X-rays of Plaintiff's lower back showed disc space narrowing at the L5–S1 level, and endplate and facet joint hypertrophy with narrowing of the neural foramina, but no fractures or dislocations, and normal alignment and lordotic curvature.  Tr. at 207.

Also in April 2009, Plaintiff presented to John Kirkland, M.D., for a consultative examination.  Tr. at 209.  Plaintiff reported back pain, uncontrolled diabetes, uncontrolled hypertension, sleep apnea, problems with circulation in his legs, coronary artery disease, and a history of pancreatitis (most recently in July 2008).  *Id.*  On examination, Plaintiff complained of tenderness in the midline of his back around L4–L5, but had full range of motion in his back, normal heart rate and rhythm, normal strength in his arms and legs with no muscle weakness or atrophy, intact sensation and reflexes, and a normal gait.  Tr. at 210.  Dr. Kirkland's impression was that Plaintiff had uncontrolled hypertension and diabetes, stable coronary artery disease, low back pain, coronary artery bypass grafting in 2003, and sleep apnea by history.  *Id.*

5

In May 2009, Plaintiff presented to Hope Health, Inc., for an initial appointment with Cassie Liang, M.D. Tr. at 230. She noted that Plaintiff had four pancreatic attacks that began in the 1990s, with the last attack having occurred in 2008. *Id.* Plaintiff reported being self-employed, but stated that work was "pretty slow." Tr. at 231. Plaintiff reported back pain and coronary artery disease, but denied chest pain or palpations, or gastrointestinal issues. *Id.* Plaintiff had regular heart rate and rhythm. *Id.* Examination of his extremities—including his shoulders—showed normal muscle tone and range of motion. Tr. at 232. Dr. Liang recommended that Plaintiff exercise continuously for at least 20 minutes at least three times a week, referred Plaintiff to a foot specialist and an ophthalmologist, and advised him regarding a diabetic diet. Tr. at 233. Lab results dated May 14, 2009, indicate that Plaintiff's blood sugar remained elevated at 122. Tr. at 236.

On August 26, 2009, Dr. Liang saw Plaintiff in follow-up for his multiple health conditions. Tr. at 227–29. On examination, Plaintiff appeared healthy, in no acute distress, and with full range of motion and normal muscle tone. Tr. at 228. Dr. Liang continued to treat Plaintiff in September and December of 2009, noting that his condition remained relatively unchanged. Tr. at 220–26. At the September visit, Dr. Liang noted Plaintiff's report of "intermittent back pain for the past 3 yr.," which he was "tolerating" with nonsteroidal anti-inflammatory medication. Tr. at 224. Lab results in September of 2009 and January of 2010 confirmed that Plaintiff's blood sugar remained high at 159 and 167. Tr. at 234, 239.

Dr. Kirkland evaluated Plaintiff again in January of 2010. Tr. at 241–42. Plaintiff said that medication helped his back "pretty good." Tr. at 241. Plaintiff reported right shoulder pain, but said it responded to nonsteroidal anti-inflammatory medication. *Id.* Dr. Kirkland noted Plaintiff had normal heart rate and rhythm; full range of motion in his back, arms, and legs; a normal gait; an unremarkable musculoskeletal examination; and a normal neurological examination. Tr. at 242. He did not diagnose a medical impairment with regard to Plaintiff's shoulder. Tr. at 241–42. Dr. Kirkland's impression was that Plaintiff had hypertension, uncontrolled diabetes, and coronary artery disease. *Id.*

State-agency doctors Todd Kolb, M.D., and James Weston, M.D., reviewed the record and opined that Plaintiff retained the ability to do medium work. Tr. at 211–18, 243–50. Dr. Weston found that Plaintiff was further limited to frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme temperatures. Tr. at 245–47.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the November 30, 2010, hearing, Plaintiff testified that he worked as a self-employed dump truck driver from 1990 until 2007. Tr. at 289–91. He stated that he stopped working in 2007 because his back was hurting all the time. Tr. at 291. He testified that he took care of his terminally-ill wife between June 2008 and October 2009. Tr. at 286, 294, 302–03. He testified that a maid and his daughter helped him. Tr. at

7

294–95.  He stated that he cooked, cleaned, and shopped for groceries.  Tr. at 295.  He stated that he did not take insulin injections and tried to control his diabetes through diet.  Tr. at 284.

Plaintiff testified that his biggest problem was stress, but stated that when his "back goes out, it goes out."  Tr. at 293.  He estimated that he had back symptoms about twice a week.  Tr. at 298.  He took Naproxen for his back "when I need it" (up to twice a day).  Tr. at 297.  He stated he did not receive any other prescribed care for his back.  Tr. at 293–94.  Plaintiff asserted that his right shoulder hurt "all the time" and said that he had difficulty reaching with his right arm.  Tr. at 301–02.  Plaintiff stated that he was right-handed.  Tr. at 307.  He stated that he had occasional chest pain related to his heart problems and that he was hospitalized shortly before the hearing after having chest pain while walking.  Tr. at 292–93.  He testified that he suffered from sleep apnea and became very sleepy after sitting still for any length of time.  Tr. at 296.  He stated he had a CPAP machine for his sleep apnea and that he used it sometimes.  Tr. at 296–97.  He testified that changing his diet helped his diabetes and hypertension.  Tr. at 299–300.  Plaintiff estimated that he could stand for 10 minutes at a time and sit for one hour at a time when he was having back problems, and said he did not lift items heavier than a grocery bag.  Tr. at 296, 298.  He stated that his doctor had not placed any limitations on his activities.  Tr. at 302.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown reviewed the record and testified at the hearing.  Tr. at 305–09.  The VE categorized Plaintiff's PRW as a dump truck driver as

medium, unskilled work.  Tr. at 306.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, but was limited to only occasional climbing, stooping, kneeling, crouching, and crawling; to occasional overhead reaching with the right arm; to avoiding concentrated exposure to vibration; and to performing indoor work where the temperature can be controlled.  Tr. at 306–07.  The VE testified that the hypothetical individual could not perform Plaintiff's PRW.  Tr. at 307.  The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform.  *Id.*  The VE identified the following medium, unskilled positions: assembler and parts packer.  Tr. at 308.  Upon questioning by Plaintiff's counsel, the VE stated that these positions would be eliminated if the hypothetical individual were limited to occasional use of his right upper extremity for gripping, grasping, reaching, pushing, and pulling.  Tr. at 309.

> 2.    The ALJ's Findings

In his January 7, 2011, decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.
2. The claimant has not engaged in substantial gainful activity since August 2, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
3. The claimant has the following severe impairments: diabetes mellitus, degenerative changes in the low back, history of gastroenteritis and pancreatitis, valvular heart disease with history of coronary artery bypass grafting and right shoulder degeneration (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with occasional climbing, stooping, kneeling, crouching, crawling; occasional overhead reaching with the right upper extremity; indoor work in a temperature controlled environment; and the need to avoid concentrated exposure to vibration.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on March 1, 1951 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 14–21.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ erred by failing to complete a proper analysis at step three, including failing to consider Plaintiff's impairments in combination; and

2)    The ALJ presented an incomplete hypothetical to the VE.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

11

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v.*

---

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

   2. The Court's Standard of Review

  The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

  The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    The ALJ Did Not Err at Step Three

Plaintiff argues that the ALJ failed to conduct a combined-impairment analysis at step three of the sequential evaluation process and "essentially bypassed" that step. [Entry #17 at 7–8].[3]  The Commissioner responds that the ALJ specifically made a finding regarding Plaintiff's combined impairments at step three and notes that while the combined-impairment analysis is located in the ALJ's RFC determination, it applies equally to the ALJ's finding at step three.  [Entry #18 at 8–10].  The Commissioner also argues that the ALJ's combined-impairment analysis is sufficient under the law of this district.  *Id.* at 10–11.  In reply, Plaintiff contends that the analysis of his combined impairments in the RFC determination was insufficient under the law.

---

[3] Although seemingly unrelated to the combined impairments argument, Plaintiff also contends under this argument heading that the ALJ improperly noted that the record did not contain evidence of treatment "at the time of the alleged onset date." Tr. at 15. He argues that the ALJ's finding incorrectly suggests that the law requires a treatment note with the same date as the alleged onset date.  [Entry #17 at 8].  The court agrees that the law does not require that there be a treatment note contemporaneous with the alleged onset date, but does not agree that the ALJ suggested such a note is required to establish disability.  Rather, the ALJ found the absence of a treatment note contemporaneous with the alleged onset date relevant to his credibility determination.   In making the determination, the ALJ stated that while Plaintiff had been hospitalized for pancreatitis a month prior to the alleged onset date, there was no evidence of ongoing treatment at the time of the alleged onset date.  Tr. at 17.  Furthermore, the earliest available post-onset treatment record was not until three months after the alleged onset date.  *Id.*  The court finds that the ALJ reasonably relied on the lack of continuing medical treatment in assessing Plaintiff's credibility and concludes that he did not err in noting the absence of a treatment record contemporaneous with the alleged onset date.

The court addresses Plaintiff's allegation of error in two parts.  First, the court considers whether the ALJ's RFC determination properly included an analysis of Plaintiff's combined impairments.  Second, the court determines whether the ALJ was required to complete a separate combined-impairment analysis at step three.

a.    The ALJ Properly Considered Plaintiff's Combined Impairments in Determining His RFC

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments).  The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B) (2004).  The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them."  *Walker*, 889 F.2d at 50.  "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."  *Id.*

In this case, the ALJ first determined Plaintiff suffered from severe impairments of diabetes mellitus, degenerative changes in the low back, history of gastroenteritis and pancreatitis, valvular heart disease with history of coronary artery bypass grafting and right shoulder degeneration.  Tr. at 14.  After concluding Plaintiff did not have an

impairment or combination of impairments of listing-level severity, the ALJ completed a detailed RFC analysis. Tr. at 14–19. In his RFC analysis, he identified each of Plaintiff's impairments and summarized the related medical records. Tr. at 17–19. He then made the following statement: "I have considered the entire record including clinical findings, results of diagnostic studies, medical opinions, the claimant's subjective allegations and combined effect of all of the claimant's impairments and find that the residual functional capacity set forth above is an accurate reflection of the claimant's residual functional capacity." Tr. at 19.

The court finds the ALJ's decision sufficient to demonstrate that he considered Plaintiff's combined impairments. Because the RFC analysis addressed each of Plaintiff's impairments and the ALJ specifically stated in the RFC analysis that he considered Plaintiff's impairments in combination, the ALJ satisfied his obligation under *Walker*. *See Thornsberry v. Astrue*, C/A No. 4:08-475-HMH-TER, 2010 WL 146483, at *5 (D.S.C. Jan. 12, 2010) (finding that "while the ALJ could have been more explicit in stating that his discussion dealt with the combination of [the plaintiff's] impairments, his overall findings adequately evaluate the combined effect of [the plaintiff's] impairments"). Furthermore, Plaintiff has offered no explanation of how more discussion of his combined impairments may have changed the outcome of this case or identified any additional restrictions that would flow from his combined impairments. For these reasons, the court finds the ALJ's RFC determination sufficiently addressed Plaintiff's combined impairments. *See Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL

3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner).

b.      The ALJ's Step Three Finding Was Not in Error

Plaintiff's allegation of error rests primarily on whether the ALJ's analysis at step three was sufficient.  At step three, the ALJ found, without explanation or discussion, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing.  Tr. at 14.

Step three is when the ALJ must determine whether the claimant's impairments meet or medically equal the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If they meet the criteria of the listed impairments, the claimant is disabled and the sequential evaluation process ends.  Plaintiff cites 20 C.F.R. § 404.1526(a)(3), which explains how an adjudicator can find that a claimant's combined impairments medically equal a listed impairment, *i.e.*, medical equivalence.  The statute provides:

> If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(a)(3).

Plaintiff contends the ALJ erred in failing to make findings regarding the combined effect of his impairments at step three.  When considering whether the ALJ properly considered the combined effect of impairments, however, the decision must be read as a whole.  *See Brown v. Astrue,* No. 10–1584, 2012 WL 3716792, *6 (D.S.C.

Aug.28, 2012) ("Accordingly, the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments.") (citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995)).    Because the court previously determined that the ALJ sufficiently addressed Plaintiff's combined impairments in his RFC analysis, the court finds that it was not error for the ALJ to omit that discussion at step three.

Even assuming the ALJ erred in his step three analysis, any error was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").    Plaintiff has failed to identify any potentially-applicable Listing, much less established how the medical evidence meets the criteria of any Listing.    *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986) (finding that it is plaintiff's burden to present evidence that her condition meets or equals a listed impairment); *see also Simmons v. Astrue*, No. 9:11–02729, 2013 WL 530471, at *5 (D.S.C. Feb. 11, 2013) (rejecting the plaintiff's objection that it was improper for the ALJ's evaluation of the RFC to substitute for a proper analysis of the combined effect of the plaintiff's impairments at step three where the plaintiff failed to establish that her combination of impairments equaled a listing).    Thus, Plaintiff's contention that the ALJ's analysis was deficient elevates form over substance and does not warrant remand.

2.    The Hypothetical Question to the VE was Proper

Plaintiff next argues that the ALJ's hypothetical to the VE was incomplete because it did not take into account Plaintiff's shoulder and back pain. [Entry #17 at 8–9].  The

Commissioner responds that the hypothetical was proper because the ALJ reasonably discounted Plaintiff's allegations of pain.  [Entry #18 at 13–15].

"In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker*, 889 F.2d at 50.  The hypothetical to the VE in this case included the same limitations set forth in the RFC determination.  Thus, Plaintiff's allegation of error is a challenge to the ALJ's RFC determination, specifically his decision to discount Plaintiff's credibility.

If an ALJ rejects a claimant's testimony about his pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence.  *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989).  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, ¶ 5.  In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage,

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

In his RFC determination, the ALJ addressed Plaintiff's complaints of back and shoulder pain and his testimony that he was unable to sit, stand, or walk for prolonged periods due to his back pain. Tr. at 17. In finding these complaints less-than-credible, the ALJ noted that while Plaintiff had been diagnosed with mild degenerative changes in his lumbar spine, x-rays revealed normal alignment and no fractures, bulges, or dislocation. *Id.* The ALJ further noted that the record did not contain documentation of any specialized treatment, physical therapy, or other surgical intervention for his back or shoulder impairments. *Id.* The ALJ later stated that the record contained no documentation of any treatment for Plaintiff's arm complaints. Tr. at 18. The ALJ also summarized the records of consulting examiner Dr. Kirkland, who observed Plaintiff with a normal gait, normal strength in all extremities, and normal range of motion in his back and all extremities. Tr. at 16, 18. Finally, in discounting Plaintiff's credibility, the ALJ referenced Plaintiff's "fairly intact" ADLs and his testimony that he had no significant side effects from any of his medications. Tr. at 18.

The ALJ's decision to discount Plaintiff's credibility as to his shoulder and back addresses many of the factors identified in SSR 96-7p. The court finds that the ALJ

20

reasonably discounted Plaintiff's complaints of pain. Consequently, the court concludes that it was proper for the ALJ to omit functional limitations related to such complaints from the hypothetical he posed to the VE.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether his decision is supported as a matter of fact and law. Based on the foregoing, the undersigned affirms the Commissioner's decision.

IT IS SO ORDERED.

February 26, 2013                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge